**In re Allen I. SAK, Debtor.**

**Joyce SAK, Plaintiff,**

v.

**Allen I. SAK, Defendant.**

**Bankruptcy No. 882–83007–20.
Adv. No. 882–0288–20.**

United States Bankruptcy Court,
E. D. New York.

June 29, 1982.

Holland & Zinker by Marvin Holland, Smithtown, N. Y., for debtor.

Joyce M. Sak, pro se.

Richard J. McCord, Glen Cove, N. Y., trustee.

*Memorandum and Order*

ROBERT JOHN HALL, Bankruptcy Judge.

Joyce Sak ("the plaintiff") prays for a judgment vacating the automatic stay that she might proceed to collect past due and accruing alimony and child support payments from her former husband, Allen Sak ("the debtor"). Simultaneously, the plaintiff moves to remand to Suffolk Supreme Court a non-payment of alimony contempt proceeding which the debtor has removed to this Court.

The plaintiff and defendant were married on 27 December 1959. On 1 October 1975 they entered into a written separation agreement under which they lived separate and apart for more than one year. Accordingly, they were divorced by a judgment entered on 13 December 1976 in Suffolk Supreme Court. The judgment awarded custody of the three minor children of the marriage to the plaintiff herein, provided for $75.00 per week in alimony and $58.33 per week in child support for each child.

On 3 June 1980, the debtor [1] filed a voluntary petition under chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq.* (Supp. IV 1980). That notwithstanding, the plaintiff thereafter commenced or continued a state court proceeding which sought a money judgment for arrears in alimony and child support. This resulted in the debtor moving to punish the plaintiff for violating the automatic stay. By a memorandum and order dated 17 September 1980, this Court held that section 362 did not stay the plaintiff from *obtaining and entering* a judgment for arrears in alimony and child support. This Court did hold, however, that plaintiff was stayed by section 362 from *enforcing* such a judgment against assets of the estate absent leave of this Court. *In re Sak*, No. 880–03007, slip op. at 3 (Bankr.E. D.N.Y. 17 Sept. 1980). In accordance therewith, plaintiff entered judgment in Suffolk Supreme Court in the amount of $13,000.00 on 19 September 1980 and docketed it thereafter. Moreover, by an order to show cause dated 26 March 1982, the plaintiff commenced contempt proceedings in Suffolk Supreme Court based on the debtor's continued failure to make his required alimony and child support payments. Thereafter, by a complaint filed on 23 April 1982, plaintiff commenced an action in this Court to vacate the automatic stay. Finally, by a petition filed on 30 April 1982, the debtor removed the pending state court contempt proceeding to this Court.

1. The original petition was filed jointly by the debtor and his present wife Emily. In the inter-im, Emily has severed and withdrawn her petition.

At the 19 May 1982 trial of the complaint to vacate the stay, it was established that the debtor has paid the plaintiff virtually nothing over the past two and a half years and that the plaintiff already has a judgment in the amount of $13,000.00 representing only a part of these arrears in alimony and child support. To which the debtor's response was essentially that the plaintiff has sufficient other income to support herself and her children presently, that the debtor was then formulating an amended plan which was to provide for the plaintiff while binding all of the debtor's creditors, whereupon to the extent that the plaintiff was not paid in full under such plan she would be free to seek the remainder from the debtor's non-estate assets.[2]

Upon analysis, however, this turns out to be a completely impractical solution.

Upon the commencement of a chapter 13 case, an estate is created consisting of virtually everything the debtor then owns or later earns or acquires prior to the case being closed, dismissed or converted to chapter 7. 11 U.S.C. §§ 541, 1306. Consequently, prior to confirmation, there are no non-estate assets. Ergo even matrimonial creditors are arguably stayed from enforcing their claims by section 362. *Cf. id.* at § 362(b)(2). *But see In re Garrison,* 5 B.R. 256 (Bkrtcy.E.D.Mich.1980). Upon confirmation, on the other hand, except as provided for in the plan, all of the property of the estate vests in the debtor. 11 U.S.C. § 1327(b). Consequently, at that time there *may be* non-estate assets for the matrimonial creditor to reach. Moreover, these assets would be subject to matrimonial claims due to the fact that, notwithstanding the binding effect on all creditors of a confirmed plan, debts representing alimony or child support are not discharged by the completion of a chapter 13 plan, *id.* at § 1328(a)(2).[3] *See In re Adams,* 12 B.R. 540 (Bkrtcy.D.Utah 1981).

Applying the foregoing to the case at bar, the Court first notes that although this case was filed on 3 June 1980, to date the debtor has been unable to confirm a plan, and in fact the Court has no idea when, if ever, such might eventuate. To force the plaintiff to wait such an indefinite period to receive that which was ordered for her and her children's survival while the debtor tortuously maneuvers a plan into confirmable form is obviously an intolerable situation and is clearly sufficient cause to vacate the automatic stay. *Cf.* 11 U.S.C. § 362(d)(1).

Moreover, the debtor's latest proposed plan would apparently not provide for anything like full payment to the plaintiff.[4] Consequently, absent an injunction by this Court, upon confirmation, the plaintiff would be free to enforce her rights against the debtor's assets which would include, by necessity, that income which the debtor

2. The debtor also argues that he may disaffirm his separation agreement as an executory contract. The Court finds such a contention frivolous in light of section 1328(a)(2) (alimony and child support non-dischargeable in chapter 13).

3. In fact, the creditor to whom such debts are owed is never stayed from seeking their enforcement from non-estate assets. 11 U.S.C. § 362(b)(2).

4. The debtor's latest plan proposes to pay the trustee $350.00 per month for 36 months, $1616.18 in proceeds from property that the debtor has previously sold and the expected proceeds from the liquidation of the debtor's one fourth interest in an office building. These amounts will then be distributed pro rata among those unsecured creditors (in which class the plaintiff presumably is) whose claims are duly allowed. Assuming the value of the office building to be as alleged by the debtor, after satisfying the mortgagee and the other interest holders, setting off the non-disputed claims and deducting the costs of the sale, the best the estate could hope to realize would be approximately $10,000. Accordingly, the debtor proposes to pay approximately $25,000.00 under this plan.

However, the claims register presently reflects approximately $20,000.00 in filed claims excluding those of the plaintiff. And as indicated above, the plaintiff already has a judgment for $13,000.00 representing arrears in alimony and child support and has established that the present arrearage is greater and still growing at the rate of $250.00 per week. Accordingly, for this plan to pay the plaintiff in full, it would have to provide for the payment of approximately $46,000.00.

needs to survive.[5] Inevitably, this will cause the debtor to default on his plan.[6]

Several courts have addressed this problem and suggested that the only practical solution would be to put this type of creditor in her own class and pay her 100% of what is due her, *In re Adams*, 12 B.R. at 543; *In re Lanham*, 13 B.R. 45, 7 B.C.D. 1358 (Bkrtcy.C.D.Ill.1981), or for the debtor to employ chapter 7 to rid himself of all of his other dischargeable debts, *In re Garrison*, 5 B.R. at 260.

This Court agrees with those decisions. Consequently, the debtor's present proposed plan is once more defective. *See* 11 U.S.C. § 1325(a)(6). Accordingly, the Court sees no alternative except to vacate the section 362 stay.

Finally, at the May 19 trial, the plaintiff made an oral motion to remand the state court enforcement proceeding which the debtor had removed to this Court. Based on both the plaintiff's victory in this section 362 action and the fact that bankruptcy courts were never intended as domestic relations forums, *Garrison*, 5 B.R. at 260, the motion is granted. *See* Interim Rule 7004(j).

So Ordered.

---

**5.** As indicated above, *see* note 4 *supra*, the debtor's latest plan proposes to pay the plaintiff only about half of the $13,000.00 in arrears and $1,000.00 per month in presently accruing alimony and child support obligations. Moreover, the debtor's proposed budget projects only a $50.00 per month "cushion" of income over expenses and only accomplishes this by denying (without explanation) that he has either rent or mortgage expenses.

**6.** After the plaintiff executes on her unpaid and unprovided for obligations, as is her right, the debtor will be faced with the choice of paying the trustee or reserving sufficient funds for bed and board. *Under such circumstances, his choice will be obvious.*