**In re Richard Mark ASHBY, Debtor.**

**Bankruptcy No. 83C–01156.**

United States Bankruptcy Court, D. Utah.

Jan. 25, 1984.

---

Richard F. Bojanowski and Peter J. Kuhn, Salt Lake City, Utah, for debtor.

Duane H. Gillman, Boulden & Gillman, Salt Lake City, Utah, for standing trustee.

Leon A. Halgren, Asst. Utah Attorney General, Salt Lake City, Utah, for the Office of Recovery Services of the Dept. of Soc. Serv., Utah, for state.

## MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

### FACTUAL AND PROCEDURAL BACKGROUND

Debtor filed a petition for relief under Chapter 13 on April 23, 1983. His schedules list a debt for child support due to the Office of Recovery Services (ORS) of the Department of Social Services of the State of Utah in the amount of $400.00. ORS received notice of debtor's filing and, on June 8, 1983, filed a proof of claim for a $1,000.00 priority claim. ORS did not explain why it believed it was entitled to a priority claim.

On June 17, 1983, debtor filed a plan proposing to pay unsecured claims such as the claim of ORS thirty cents on the dollar. On November 3, 1983, debtor filed a plan with identical treatment of the ORS obliga-

tion. This plan was confirmed on November 18, 1983.

Debtor filed his state income tax return for the 1982 tax year in early 1983. He was entitled to a refund of a $406.00 overpayment. After waiting several months for his return, he contacted ORS to inquire about the refund on June 30, 1983.

On July 14, 1983, debtor came to the ORS office in Salt Lake City and spoke with an ORS investigator. He signed a wage assignment to cover his support debt.

On July 18, 1983, debtor phoned the ORS office and asked for his refund check, which the ORS office subsequently received in August of 1983 from the State Tax Commission under a State program which applies tax refunds to child support obligations. An ORS officer contacted the standing trustee and the ORS' attorney. The ORS officer testified she was told by the standing trustee that if the tax return was filed pre-petition, the money was to go to ORS but that if the tax return was filed post-petition, the money was to go to the bankruptcy court. The ORS attorney, when contacted, told the ORS officer that this information appeared correct to him. Consequently, ORS applied the state tax refund to its debt. The ORS officer testified that it is the policy of her office to make inquiries in cases of bankruptcy before acting on the setoff of tax refunds. In this case, ORS did not seek or obtain relief from the automatic stay before setting off its debt against debtor's tax refund.

On August 12, 1983, debtor filed an application for an order to show cause against ORS. On September 20, 1983, the court issued an order to show cause against ORS requiring it to appear and show cause why it should not be held in contempt, required to pay debtor's attorneys fees and costs, and required to turn over debtor's tax refund. At a hearing held on debtor's motion for an order to show cause against ORS on October 5, 1983, ORS admitted that it violated the automatic stay when it applied debtor's tax refund to its debt. ORS tendered a check for the full amount of the tax refund. Debtor accepted the check. Thus, the issue

of turnover is moot. The issues of contempt and attorneys fees and costs remain.

## DISCUSSION

In this case, an order was embodied in the notice of the meeting of creditors mailed to ORS on June 1, 1983. It cautioned creditors that "as a result of the filing of the petition, certain acts and proceedings against the debtor and his property are stayed as provided in 11 U.S.C. § 362(a)." Violations of the automatic stay, and thus of the order, may be addressed under 11 U.S.C. § 105(a) and 28 U.S.C. § 1481. A comprehensive explanation of the contempt powers of this court is found in *In re Reed,* 11 B.R. 258 (Bkrtcy.D.Utah 1981).

This is a proceeding involving civil not criminal contempt because its purpose is to compensate for injuries suffered by debtor from ORS' disobedience of a court order. The purpose of this proceeding is not to punish ORS by fine or imprisonment of any of its officers. *See Reed, supra* at 266. The sanctions sought against ORS are "not punitive but remedial, i.e., to compensate debtor for injuries in connection with violation of the stay." *Id.* at 267. The proceeding was held under the assumption that only civil contempt was at stake. No notice of criminal contempt as required by law was given. ORS did not challenge the jurisdiction of this court to determine the issues. The U.S. Attorney was not present to press criminal charges against ORS. The fact that debtor sought a contempt citation believing he was denied the statutory relief to which he was entitled under 11 U.S.C. § 362(a) indicates the civil nature of the contempt.

ORS argued that it should not be held in contempt because the facts of this case do not demonstrate gross misconduct or bad faith or willful and malicious conduct. ORS relies on *In re Hammett,* 28 B.R. 1012 (D.C.E.D.Pa.1983).

 The disobedience, in civil contempt, need not be willful. *Reed, supra* at 268. The United States Supreme Court has held that "the absence of willfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance [citations omitted]. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey specified provisions of the statute. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949) (referring to violations of a decree enjoining violations of the Fair Labor Standards Act). The principle of law announced in *McComb* applies with equal force to the injunction of the automatic stay imposed by 11 U.S.C. § 362(a). Thus, notwithstanding the alleged good faith of ORS, the court finds that the ORS acted in contempt of its order.

 Having found a civil contempt, the court may award compensation to the debtor. Actual loss measures compensatory fines for civil contempt. *Reed, supra* at 276. Attorneys fees may be a part of compensation. *Id. See also Allied Materials Corp. v. Superior Products Co.,* 620 F.2d 224 at 227 (10 Cir.1980).

 ORS argues that compensatory remedies are not appropriate in this case because, although ORS "technically" violated the stay, certain facts show that ORS acted in good faith. First, ORS argues, there is case law supporting the proposition that if ORS had asked for relief from the stay, the court could have granted relief because ORS had a right of setoff. Second, there is case law supporting the proposition that the act of retaining a tax refund by a creditor with a right to offset a debt against the refund does not violate the stay. Third, in this case ORS asked the advice of its attorney and of the standing Chapter 13 trustee before actually applying debtor's tax refund to his debt to ORS.

None of these arguments is persuasive. First, case law supporting a lift of the stay if ORS had asked the court to lift the stay has nothing to do with this case. ORS did not, as it admits it was required to do before applying the tax refund to the support obligation, request that the court terminate the stay. Second, case law saying that retaining a tax refund pre-confirmation does not violate the stay if done by a creditor with a right of setoff has nothing to do with the issue here. ORS is not being held in contempt for retaining the refund. In this case, an actual offset occurred, taking this case well beyond the pale of case law which justifies mere retention. Third, neither the ORS' attorney nor the standing trustee had authority to modify or terminate the automatic stay. Only this court had that authority. While ORS' efforts to get advice on the consequences of its actions were proper, acting on advice of counsel does not remove the fact that the stay was violated and that damages resulted from the violation. *See Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 58 (2d Cir.1976) *cert. denied* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540.

As noted earlier, ORS returned debtor's tax refund at the hearing held on the court's order to show cause.

 ORS should be ordered to compensate debtor for costs and attorneys fees incurred by debtor in his attempt to convince ORS to return what should not have been withheld. These costs and fees are losses or damages sustained by debtor by reason of ORS' noncompliance with the automatic stay and the orders of this court.

On the issue of the measure of costs and fees in this case, some background is necessary. Debtor's order to show cause against ORS in this case was issued simultaneously with an order to show cause against the IRS and ORS in three other cases. The hearing held in this matter and the briefs filed with the court addressed all four of the cases. Debtors in all four of the cases employed the same attorney. The attorney filed an affidavit which covered all four cases and itemized the work performed but did not divide the time or costs between the four cases. The total time spent was 28 hours, for which the attorney requests a fee of $1,995.00. Costs total $37.12. Debtors prevailed in three of the cases but lost in the fourth case.[1]

Based upon a review of the files in all four matters and a comparison of the files with the affidavit of the attorney, it appears that the attorney's time was equally divided between the four cases. Because of the small amount of costs involved, an equal apportionment of costs seems appropriate. Therefore, in each case in which the debtors prevailed, the IRS or the State of Utah, as the case may be, should be required to pay one-fourth of the $1,995.00 in fees and one-fourth of the $37.12 in costs. This case is one in which debtors prevailed. Thus, ORS should be required to pay to debtors the sum of $478.75 in fees and the sum of $9.28 in costs.

An order is entered with this opinion.

---

1. Opinions in two of the four cases are issued simultaneously with this opinion. *See In re Jack and Vickie Warden,* 36 B.R. 968 and *In re Alan E. and Vickie Burrow,* 36 B.R. 960. An opinion in the fourth case was issued on December 12, 1983. *See In re David Paul and Penelope A. Johnson,* 36 B.R. 958.