**In re Deborah Lee TOTH, Richard Frank Toth, Debtors.**

**Richard D. OLIVER, Movant,**

v.

**Richard F. TOTH, Deborah Toth, Respondents.**

**Bankruptcy No. 94–63944.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 19, 1996.

Richard H. Thomson, Clark & Washington, Atlanta, GA, for Plaintiff/Petitioner.

John H. Moore, Marietta, GA, for Defendant/Respondent.

Louis Brown, Atlanta, GA, for Chapter 13 Trustee.

### ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This case is before the court on Movant's motion for an order confirming the foreclosure sale of real property of Debtor. Hearing was held and the parties, including the Chapter 13 Trustee filed post-hearing letter briefs.

### STATEMENT OF FACTS

This Chapter 13 case commenced March 21, 1994. Debtors' Chapter 13 plan was confirmed May 20, 1994. One of the provisions contained in the standard order confirming a Chapter 13 plan in this district is that, during the pendency of the case, debtors may not incur debt without written permission of the Chapter 13 Trustee. Thus, in January 1995, Debtors sought and obtained approval by the Chapter 13 Trustee to incur a mortgage loan in the principal amount of $66,500 to purchase real property located at 1562 Tewberry Trail, Marietta, Georgia (the "Property"). The Chapter 13 Trustee's approval letter was dated January 9, 1995, and contained the following admonition: "Should you default in payments on this loan, the lender will not be restrained by the court from taking collection measures."

The Property secured the debt and was purchased from Movant, who financed the sale. Movant knew of Debtors' pending Chapter 13 case. The sale closed January 25, 1995. Debtors subsequently defaulted on the loan. Movant accelerated the note in September, 1995 and advertised for an October 1995 foreclosure sale.

In late September, 1995, Debtors' counsel contacted Movant's counsel, asserting that the foreclosure sale was stayed by the automatic stay of 11 U.S.C. § 362(a) and requesting that the foreclosure sale be stopped. Nevertheless, on October 3, 1995, the Property was sold at foreclosure. The deed-under-power, however, has not yet been recorded. Following the foreclosure sale, Movant filed the instant motion.

Debtors assert that the postpetition foreclosure sale of the Property violated the automatic stay and is, therefore, void. Movant contends that the automatic stay is not applicable to property acquired by a Chapter 13 debtor after confirmation of the Chapter 13 plan.

## CONCLUSIONS OF LAW

■ The automatic stay of § 362(a) operates to stay the following:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

As Movant's claim arose *after* the commencement of the case, only § 362(a)(3) or (4) could be applicable in the instant case. In order for either of those subsections to be applicable to Movant's foreclosure sale, the Property must be property of the estate.

Property which is included in property of the estate is defined in § 541 and, in Chapter 13 cases, by § 1306. Section 1306 provides that property of the estate in a Chapter 13 case includes all types of property described in § 541 which Debtor acquires after commencement of the case. Describing the effect of confirmation upon property of the estate, § 1327 provides, in pertinent part:

(b) Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

In the instant case, neither Debtors' plan nor the order confirming the plan contain any provision which would affect the operation of § 1327(b) or (c). Therefore, the central issue in this matter appears to be the meaning of the word "vest" in those two subsections: When property of the estate "vests" in the debtor following confirmation, is it no longer property of the estate or is "vesting" simply some higher level of possession than that accorded to the debtor by § 1306(b)? [1]

The Bankruptcy Code does not define the term "vest" but the term is used in two other sections of the Bankruptcy Code. Section

---

1. Section 1306(b) provides: "Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."

1141(b) is identical to § 1327(b). Section 349 describes the effects of dismissal and includes a provision that dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." In *Black's Law Dictionary*, "vest" is defined as "to give an immediate, fixed right of present or future enjoyment.... To clothe with possession." "Vested" is defined as "Fixed; accrued; settled; absolute. Having the character or given the rights of absolute ownership[.]"

Numerous published cases have addressed the issue of the effect upon property of the estate of confirmation of a Chapter 13 plan. No consensus, however, appears to exist. The courts which have ruled on the issue reached one of three conclusions regarding property of the estate following confirmation of a Chapter 13 plan:

(a) property committed to the plan remains property of the estate but all other property becomes property of the debtor;

(b) all property of the estate becomes property of the debtor; and

(c) all property of the estate remains property of the estate.

### A. After Confirmation, Property of Estate Includes Only Plan-essential Property

Illustrative of the first result is an unpublished case from this district, *Jennings v. B.F. Saul Mortgage Co.*, Case No. 86–01565 (Bankr.N.D.Ga., June 1, 1988) (J. Bihary). Although the issue was not before the court and not necessary to the decision, in *dicta*, the court opined that property of the estate does not cease to exist following Chapter 13 confirmation because the statutory scheme of Chapter 13 contemplates the bankruptcy court's continuing supervision and jurisdiction over "property used to fund claims described in the plan."

In another case from a bankruptcy court in this circuit, *American General Finance, Inc. v. McKnight*, 136 B.R. 891 (Bankr. S.D.Ga.1992) (J. Dalis), a creditor obtained a judgment against the debtor following the debtor's default on a postpetition credit transaction. The court held the stay was not

violated, concluding that the term "vest" in § 1327 must mean more than mere possession. The court held that only postpetition earnings devoted to Chapter 13 plan payments were property of the estate.

In the case of *In re Root*, 61 B.R. 984 (Bankr.D.Colo.1986), the IRS levied upon Debtor's property to collect postpetition taxes. The court concluded that any property not designated in the plan or confirmation order as property necessary for execution of the plan revests in the debtor and is not property of the estate. *Accord, In re Thompson*, 142 B.R. 961 (Bankr.D.Colo.1992) (IRS levy for postpetition taxes); *In re Ziegler*, 136 B.R. 497 (Bankr.N.D.Ill.1992) (garnishment by postpetition judgment creditor); *In re Markowicz*, 150 B.R. 461 (Bankr. D.Nev.1993) (IRS levy for postpetition taxes); *Bernstein v. Nagel*, 20 B.R. 595 (Bankr. M.D.Fla.1982) (J. Paskay) (debtor's former wife sought to proceed postconfirmation to collect unpaid child support); *In re Johnson*, 36 B.R. 958 (Bankr.D.Utah 1983) (child support recovery unit garnishment of debtor's postpetition tax refund); *In re Adams*, 12 B.R. 540 (Bankr.D.Utah 1981) (proceeding postconfirmation to collect unpaid child support).

In the case of *Denn v. Aarestad*, 37 B.R. 33 (Bankr.D.Minn.1983), the debtor's plan provided for submission of all Debtor's future earnings and other future income to the Chapter 13 Trustee's supervision and control and provided for vesting of same in the debtor only upon dismissal, conversion or discharge. The court held that, absent provision in the debtor's plan, all property of the estate except property necessary to execution of the plan would have vested in the debtor, i.e. ceased to be property of the estate. Because the plan provided otherwise, however, a postconfirmation garnishment was held to violate the automatic stay.

### B. All Estate Property Becomes Debtor Property at Confirmation

Another line of cases holds that *all* property of the estate vests in debtor at confirmation and is no longer property of the estate. In the case of *In re Petruccelli*, 113 B.R. 5 (Bankr.S.D.Cal.1990), the IRS levied on the

debtor's bank accounts to collect postpetition taxes. The funds in the account were funds earned by the debtor postpetition. Those funds were also the source of the debtor's payments to the Chapter 13 Trustee. The court engaged in an extensive and thorough discussion and analysis of the multiple Bankruptcy Code sections implicated in the issue, including employing principles of statutory construction and examining policy arguments for and against continuing the protection of the automatic stay postconfirmation. Quoting from *In re Morgan and Morgan, Inc.*, 24 B.R. 518 (Bankr.S.D.N.Y.1982):

> [T]he debtor is not entitled to a permanent umbrella shielding it from all lawsuits while it makes its payments under the plan of arrangement. The order of confirmation marked the commencement of the period when a debtor was weaned from dependence on the bankruptcy court's injunctive powers so as to stand on its own feet with respect to post-confirmation matters.

24 B.R. at 615. The *Petruccelli* court held that "upon confirmation, property of the estate vests in the debtor and is no longer property of the estate, unless the plan or order of confirmation provides otherwise."

In the case of *Laughlin v. IRS*, 98 B.R. 494 (D.Nebr.1989), the IRS levied on the Chapter 13 Trustee to require the Trustee to identify and turn over funds held for the benefit of an attorney, apparently a nondebtor, who was the attorney for three debtors whose plans were being administered by the Chapter 13 Trustee. The Chapter 13 Trustee filed a motion for contempt against the IRS and sought sanctions for violation of the automatic stay. The court held that § 1327 "vesting" means that present and future funds in hands of a Chapter 13 Trustee are *not* property of the estate; therefore, the § 362 stay was not violated. The court explained that revesting means an end to the estate; only if specifically provided in the plan or confirmation order does property remain property of the estate.

Similarly, in the case of *Lambright v. IRS*, 125 B.R. 733 (Bankr.N.D.Tex.1991), two years postconfirmation the IRS levied on the debtor's pension, which was source of her Chapter 13 plan payments, for payment of unpaid postpetition taxes. The court held that unless the plan or confirmation order provided otherwise, all property of estate vests in the debtor postconfirmation, terminating the estate and the automatic stay. The court's rationale was that any other interpretation of the interrelationship of § 1306 and § 1327(b) would render § 1327(b) superfluous or insignificant. The debtor's policy argument that collection efforts against postconfirmation property could frustrate the debtor's reorganization was rejected by the court. "[T]he debtor has a choice under the Code. Rather than having property of the estate vest in the debtor at confirmation, [the debtor's] plan could have provided that the provisions of § 1327(b) not be triggered."

In the case of *Mason v. Williams*, 51 B.R. 548 (D.Ore.1985), a postconfirmation judgment creditor garnished the debtor's wages. The debtor's confirmation order recited the provisions of § 1327. The court held that because the debtor's plan provided for revesting of property in the debtor, the estate ceased to exist and the stay no longer protected the debtor as to postpetition claims.

### C. "Property of the Estate"—Until Discharged or Dismissed

The third line of cases holds that vesting does not end the estate and, therefore, all property of the debtor, even that acquired postconfirmation, is property of the estate and is protected by the automatic stay until discharge or dismissal. In the case of *Farmer v. Cole*, 150 B.R. 68 (Bankr.N.D.Ala.1991), debtor sought to enjoin his former wife from proceeding against the debtor to collect prepetition child support arrearages.[2] The debtor was threatened with incarceration. The court held that, in a Chapter 13 case, all property of the debtor as of petition date (except exempt property) and all property acquired by the debtor postpetition is property of estate. Therefore, the automatic stay applied to prohibit the actions of the debtor's former wife.

---

**2.** Pursuant to 11 U.S.C. § 362(b)(2), a child support claimant may enforce prepetition claims against property that is not property of the estate.

In the case of *Security Bank of Marshall-town, Iowa v. Neiman*, 1 F.3d 687 (8th Cir. 1993), postconfirmation, the debtors, who were farmers, converted their Chapter 13 case to a Chapter 7 case. During the Chapter 13 case, the debtors continued to farm and continued to incur debt postconfirmation. The post-confirmation debt was paid by debtors from funds obtained by the debtors from the sale of a herd of hogs. Following conversion to Chapter 7, the Chapter 7 Trustee initiated adversary proceedings against those postconfirmation creditors to recover the postconfirmation debt payments as preferential. Those adversary proceedings were settled by an agreement that the postconfirmation creditors could retain payments received in the ordinary course of business. Approximately $43,000 was returned to the Chapter 7 Trustee. From that fund, the Chapter 7 Trustee proposed to pay Chapter 7 and then Chapter 13 administrative expenses, then the postconfirmation farming debts as § 503(b) expenses. A prepetition unsecured creditor objected, arguing that the estate ceased to exist at confirmation and, therefore, no postconfirmation costs of preserving the estate could be allowed. The court held that "vesting" does not convert property of the estate into property of the debtor. Debts incurred postconfirmation to preserve the estate are entitled to priority. The court distinguished the revesting provided by § 1141 by noting that in a Chapter 11 case, a debtor receives a discharge at confirmation, thereby ending the stay.

The case of *Gaertner v. Choske*, 143 B.R. 811 (Bankr.W.D.Pa.1992), concerned postpetition continuation of garnishment to collect a child support arrearage. The court held that all postpetition earnings are property of estate and are protected until either discharge, conversion or dismissal. Although § 1327 was argued, the court rejected a revesting argument by focusing on § 1306 without any significant discussion of § 1327.

In the case of *In re Grissom*, 137 B.R. 689 (Bankr.W.D.Tenn.1992), an unsecured creditor moved postconfirmation to require the debtors to pay all future income tax refunds to Chapter 13 Trustee. The court held, without discussion of § 1327, that postconfirmation tax refunds are property of the estate but the court declined to require that they

must be paid into the plan. Disposable income issues are properly considered at or before confirmation and may not be raised for the first time postconfirmation.

The case of *Riddle v. Aneiro*, 72 B.R. 424 (Bankr.S.D.Cal.1987), concerned the postconfirmation modification of a nonresidential real property lease. The court held that postconfirmation vesting of property does not convert property of estate into property of debtor. The court interpreted confirmation as a term not relevant to determining what is or is not property of estate: only commencement of the case and either dismissal, discharge or conversion are relevant.

In the case of *In re Clark*, 71 B.R. 747 (Bankr.E.D.Pa.1987), a creditor sought to execute on a U.S. District Court judgment for a postconfirmation claim. The court opined that neither § 1306 nor § 1327 are "models of clarity" and discussed the competing policies relevant to the issue: Fairness to postconfirmation creditors and facilitating the debtor's ability to obtain new credit by not impeding creditors' collection efforts; versus protecting the debtor from invasion and dissipation of scarce resources by postpetition creditors. The court held that property of estate continues postconfirmation. The court also noted, however, that the burden of proof for a postconfirmation creditor in a proceeding for relief from automatic stay is slight because it is unfair to freeze that creditor in place while the debtor, "in leisurely fashion, completes his Plan payments and is discharged."

 The most persuasive resolution of the "vesting" and confirmation-effect issues is the comprehensive discussion contained in the case of *Petruccelli*, 113 B.R. 5. As the court noted in that case, if the "vesting" provided for in § 1327 does not act to end the estate, then § 1327 becomes redundant and the term "vest" is deprived of any meaning separate from "possession." Pursuant to § 1306, the debtor in a Chapter 13 case remains in possession of property of the estate throughout the case. Therefore, "vest" must mean something more than "possession." The court noted similar provisions using the term "vest" in § 1141 and § 349, citing cases interpreting the meaning of term "vest" in those Code sections as effecting

termination of property of the estate. The use of the term in § 349 is especially persuasive as termination of the estate upon dismissal is a natural consequence of the termination of the bankruptcy court's jurisdiction upon dismissal.

The *Petruccelli* court also discussed the policy reasons for concluding that "vesting" ends the estate. These are the same policies discussed by *Clark* court but the *Petruccelli* court reached a contrary result. The *Petruccelli* court described the policy that the debtor must be able to obtain credit after confirmation and the ability to use revested property is important to that goal. Subjecting postpetition creditors to the automatic stay and blocking attempts to collect following postconfirmation defaults would make a debtor a credit pariah. The competing policy focuses upon enabling the debtor to perform throughout the term of the plan without postpetition creditors depriving the debtor of the ability to perform by seizing property or wages. That competing policy, however, is implemented by the requirement that debtors obtain permission of the Chapter 13 Trustee before any credit or loan is obtained.

Such oversight is intended to assure review by an objective party to determine whether the proposed new credit will adversely affect the debtor's ability to perform under the confirmed plan. Additionally, if a debtor wishes the § 1327(b)-allowed protection of the automatic stay following confirmation, that protection may be obtained by the simple expedient of so providing in the plan or confirmation order, as is permitted by the Bankruptcy Code.

In conclusion, the Property which Debtors acquired postconfirmation did not become property of the estate and is not protected by the automatic stay of § 362. Therefore, the foreclosure sale accomplished following Debtors' default is valid and the deed may be recorded. Accordingly, it is hereby

ORDERED that Movant's motion is GRANTED: The foreclosure sale is valid and the deed may be recorded.

IT IS SO ORDERED.